T.C. Memo. 1997-199

UNITED STATES TAX COURT

DAVID W. CHIU, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5197-95.                    Filed April 30, 1997.

David W. Chiu, pro se.

<u>Jason M. Silver</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined a deficiency in petitioner's 1990 Federal income taxes in the amount of $15,211.20 and additions to tax under section 6651(a)[1] and

---

[1]Unless otherwise noted, section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

section 6654(a) in the amounts of $3,081.80 and $790.55, respectively.

After concessions, the issues for decision are as follows: (1) Whether funds withdrawn by petitioner from a qualified individual retirement account (IRA) are includable in his gross income, and if so, whether petitioner is subject to a 10-percent additional tax on early distributions under section 72(t). We hold that the funds are includable and that petitioner is subject to the 10-percent additional tax under section 72(t). (2) Whether petitioner is allowed deductions for moving expenses, real estate taxes, home mortgage interest, charitable contributions, and trade or business expenditures. We hold that petitioner has substantiated the deduction for home mortgage interest in the amount of $7,414.77. We hold that the remainder of the aforementioned deductions are not allowed. (3) Whether petitioner is liable for an addition to tax for failure to timely file his 1990 Federal income tax return under section 6651(a)(1). We hold that he is. (4) Whether petitioner is liable for an addition to tax for failure to pay estimated income tax under section 6654(a). We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate by this reference the stipulation of facts and

attached exhibits.  At the time of filing the petition, petitioner resided in San Gabriel, California.

Petitioner was born in China in 1950 and came to the United States in 1970.  Petitioner received a bachelor of science degree in engineering in the United States and, after graduation, took graduate courses in business and corporate finance.

In 1986, petitioner commenced employment with Varian Associates, Inc. (Varian), in Palo Alto, California. Petitioner's 1990 Federal income tax return correctly lists his W-2 wage income for the 1990 taxable year from Varian as $35,181, from which amounts were withheld for Federal income tax purposes.

In the fall of 1990, petitioner moved from San Francisco to Los Angeles where he remained for approximately 3 weeks before moving to Hong Kong.  Petitioner arrived in Hong Kong on November 28, 1990.  Petitioner did not move to Hong Kong in connection with a job transfer or to accept new employment and did not become an employee of any business while in Hong Kong.  At the time petitioner moved to Hong Kong, he intended to start a business of his own, although he did not have specific plans to start any particular business.  On his 1990 Federal income tax return, petitioner claimed a deduction for moving expenses in connection with the moves to Los Angeles and to Hong Kong in the amount of $3,184, of which $500 was estimated as the cost of his move to Los Angeles.

On November 28, 1990, petitioner withdrew $17,558 from a U.S. bank, representing money from an IRA established on his behalf by Varian (Varian IRA).  On December 18, 1990, petitioner transferred $23,000 from the Bank of America to an account at a branch of the Hong Kong & Shanghai Banking Corp. located in Hong Kong.

While in Hong Kong, petitioner undertook steps to develop a computer software package designed to handle currency exchange transactions.  Petitioner intended to market the software package once developed.  On Schedule C of his 1990 Federal income tax return, petitioner claimed a deduction of $2,618 consisting of expenses for advertising, bad debts, commissions and fees, depreciation and/or section 179 expenses, and meals and entertainment.  Petitioner returned to the United States for approximately 1 month in 1991 in order to purchase a computer system for use in the development of the software package. Petitioner returned to the United States on a permanent basis in October of 1992.

Petitioner signed his 1990 Federal income tax return on April 1, 1995, and the return was stamped received at the Internal Revenue Service Center in Fresno, California, on July 8, 1995.  On his 1990 Federal income tax return, petitioner reported his filing status as single and claimed Schedule A deductions in the amount of $2,046 for State and local income taxes, $1,130 for

real estate taxes, $5,760 for home mortgage interest, and $2,568 for charitable contributions, in addition to the previously outlined Schedule C deductions totaling $2,618 and the deduction for moving expenses in the amount of $3,184.

OPINION

There are two evidentiary matters we must address at the outset. First are the objections raised by respondent in paragraphs 4 and 5 of the stipulation of facts to the admission of Joint Exhibits 3-C and 4-D. Joint Exhibit 3-C consists of a copy of a "Statement of AssetVantage Account" from the Hong Kong & Shanghai Banking Corp. dated December 1, 1990, bearing petitioner's name and an account number (AssetVantage Account). Joint Exhibit 4-D consists of a copy of a transfer payment order dated December 18, 1990, from the Bank of America to the Hong Kong & Shanghai Banking Corp., showing a transferred amount of $23,000, listing David W. Chiu as remitter and David Woon Chiu as beneficiary, to the benefit of an account number identical to that shown on the AssetVantage Account. Respondent objects to the admissibility of the handwritten marks on Exhibit 3-C on the grounds of relevance, authenticity, completeness, and hearsay. Respondent also objects to the admissibility of the entire document comprising Exhibit 3-C on the ground of hearsay. Respondent objects to the admissibility of Exhibit 4-D on the grounds of relevance and hearsay. We hereby overrule

respondent's objections, except as to the handwritten marks on Joint Exhibit 3-C, and admit Joint Exhibit 3-C, excluding the handwritten marks thereon, and Joint Exhibit 4-D.[2]

The second evidentiary matter is the admissibility of the following evidence offered by petitioner in his post-trial request to reopen the record:

> (1) A document denominated "Marine Midland Bank" and "Corporate Data" listing the address and certain financial information for Marine Midland Bank (marked as petitioner's Exhibit 8);

> (2) A document denominated "Annual Statement of Account for 1990" and "Substitute Form 1098", listing the recipient's/lender's name as Bank of America and the payer's/borrower's name as David Woon Chiu or Shere-Ling Yau, and showing an account number (marked as petitioner's Exhibit 9); and,

> (3) Copies of receipts bearing the logo of "Goodwill Industries", and dated within the 1990 calendar year, with the names of David Chiu, or David Chiu and Shere Yau, listed and a description of various items (marked as petitioner's Exhibit 10).

Respondent objects to the admission of the foregoing on the grounds of relevance, authentication, hearsay, and completeness. We conclude that respondent is not prejudiced by the reopening of the record for the admission of the exhibits.[3]  We overrule

---

[2]We note that admission of these exhibits does not, in any event, enable petitioner to prevail on the issue to which they relate.

[3]Reopening the record for submission of additional proof is within the discretion of the Court.  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971).

respondent's objections regarding Exhibit 9[4] and sustain

respondent's objections regarding Exhibits 8 and 10.[5]

IRA

The first issue we must decide is whether the $17,558 petitioner withdrew from the Varian IRA is includable in gross income, and if so, whether petitioner is subject to the 10-percent additional tax on early distributions under section 72(t). The parties do not dispute that petitioner withdrew $17,558 on November 28, 1990, from a qualified IRA. Petitioner testified that he transferred the entire amount on December 18, 1990, to an account at the Hong Kong & Shanghai Banking Corp., which, he argues, should qualify him to exclude the withdrawn amounts from income as a rollover contribution. Respondent first disputes whether such a transfer has been demonstrated by the evidence but more importantly contends that a valid rollover did not occur in any event because the transfer was to a foreign bank.

---

[4]The Substitute Form 1098 marked as Exhibit 9 bears the same account number as that written on six of petitioner's checks offered by him at trial to substantiate his mortgage interest payments and received into evidence without objection by respondent.

[5]Respondent's hearsay objections to Exhibits 8 and 10 are well taken, and there was no advance notice of the evidence to respondent as required for the invocation of the hearsay exception under rule 803(24) of the Federal Rules of Evidence.

The documentary evidence regarding the transfer does not entirely corroborate petitioner's testimony. A copy of a "Statement of AssetVantage Account" appended to the parties' stipulation indicates that petitioner was the holder of such an account located at the "Hong Kong Office" branch and gives the account number and other account information as of December 1, 1990. Also appended to the stipulation is a copy of a Bank of America Transfer Payment Order showing a transfer on December 18, 1990 of $23,000 by petitioner to the account number in petitioner's name at the Hong Kong branch office of the Hong Kong & Shanghai Banking Corp., described as an AssetVantage Account. Thus we conclude that petitioner had such an account located at the Hong Kong branch of the Bank and made a transfer to it of $23,000 on December 18, 1990. Petitioner did not explain the difference between the IRA withdrawal of $17,558 and the subsequent transfer of $23,000.

Even if we were to assume that the $23,000 transfer consisted in part of the Varian IRA proceeds, petitioner has nonetheless failed to show that the transfer was made to another qualified IRA, as required for the withdrawn amounts to qualify as a rollover contribution. Sec. 408(d)(3)(A)(i). Section 408(a) defines an IRA as "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries" (emphasis added) which meets certain other

requirements set forth in that section.[6]  Regulations under section 408 further clarify that such a trust "must be maintained at all times as a domestic trust in the United States."  Sec. 1.408-2(b), Income Tax Regs.[7]

Petitioner maintains that the amounts withdrawn from his Varian IRA were transferred to an account at the Hong Kong & Shanghai Banking Corp., located in Hong Kong.  Even if we were to assume that the account at the Hong Kong bank was set up as a trust or a custodial account[8] (and petitioner has provided no evidence in that regard), petitioner's rollover claim would fail because he has not shown that the transfer was to a domestic entity.  The situs of a trust is generally defined to be the place of performance of the active duties of the trustee, and where the settlor selects a bank as the trustee, the location of the bank has been held to be the situs of the trust.  90 C.J.S. Trusts, sec. 160(b) at 12 (1955).  Thus, the available evidence strongly suggests that the situs of any trust to which the Varian IRA proceeds were transferred is the Hong Kong branch office of

---

[6]Sec. 408(h) further provides that a "custodial account" may be treated as a "trust" for purposes of sec. 408, but such custodial account must also be maintained in the United States.

[7]In certain circumstances, a tax-free rollover from an IRA may also be made into a qualified pension or profit-sharing plan. See sec. 408(d)(3)(A)(ii).  However, a qualified plan likewise denotes a "trust created or organized in the United States". Sec. 401(a).

[8]See supra note 6.

the Hong Kong & Shanghai Banking Corp.  Petitioner argued that the Hong Kong & Shanghai Banking Corp. owns Midland Bank, a U.S. bank, but this factor does not affect our conclusion regarding the probable situs of any trust created in connection with the IRA funds transfer.  On this record, we conclude that petitioner has failed to show that the $17,558 that he withdrew from the Varian IRA was paid into a trust or custodial account created and maintained in the United States, as required by section 408(a) and (d)(3)(A)(i), and section 1.408-2(b), Income Tax Regs., and therefore such amount is includable in his gross income.

Amounts paid or distributed out of an IRA must be included in gross income "in the manner provided under section 72".  Sec. 408(d)(1).  A 10-percent tax on "early distributions" generally applies where a taxpayer receives a distribution from a qualified retirement plan which is includable in his gross income.  Sec. 72(t)(1).  For purposes of the 10-percent tax, a qualified retirement plan includes an IRA described under section 408(a).  Sec. 4974(c)(4).  Although section 72(t)(2) sets forth certain exceptions to the 10-percent tax on early distributions, petitioner has presented no evidence to suggest he fits within any of these exceptions.  Therefore, we find that petitioner is liable for the 10-percent additional tax under section 72(t).

Moving Expenses

Petitioner claimed $3,184 for moving expenses associated with moves to Los Angeles and to Hong Kong, of which $500 is estimated to relate to his move to Los Angeles.[9] Respondent disputes whether petitioner has substantiated payment of the claimed expenditures and whether petitioner has met the requirements for deductibility under section 217.

Respondent's position regarding the failure to substantiate these expenses is well taken. Other than the bare numbers claimed on the Form 3903F attached to his return, petitioner provided no evidence that would substantiate these amounts or offer a basis on which the Court could make an estimate under the Cohan[10] rule, notwithstanding the fact that the Court left the record open an additional 30 days after the trial for petitioner to submit such evidence and, indeed, reopened the record for receipt of evidence on other matters. Moreover, with respect to the evidence that petitioner did provide, such evidence either demonstrates that the requirements of section 217 were not met (in the case of certain pre-move househunting expenses claimed on the return) or is insufficient to show that the requirements of

---

[9]Some portion of the expenses claimed was for "Pre-move Househunting Expenses and Temporary Quarters", but the exact amount cannot be ascertained because of the haphazard placement of figures on the Form 3903F submitted with petitioner's return.

[10]Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).

section 217 have been satisfied (in the case of all remaining moving expenses claimed).

With respect to the pre-move househunting expenses claimed, such expenses are deductible only if incurred after the taxpayer has obtained employment at the new location. If the new work is self-employment, the taxpayer is treated for this purpose as having obtained new employment when substantial arrangements to commence such work have been made. Sec. 217(b)(1)(C), (f)(2). For these purposes, the new principal place of work for petitioner would be Hong Kong. In light of petitioner's testimony that at the time of his move to Hong Kong he had no specific plans to begin any particular business, we conclude that petitioner had not made "substantial arrangements" within the meaning of section 217(f)(2) at the time of the move, and consequently he has failed to show his entitlement to a deduction for any pre-move househunting expenses.

As for petitioner's claimed deduction for expenses of temporary quarters, the record is devoid of any substantiation of the actual expenditures for such quarters, or of any evidence from which the Court could determine the point in time (after arrival) when substantial arrangements to commence work had been made so that the expenditures might be eligible for deduction. Sec. 217(b)(1)(D), (f)(2). Thus, petitioner has failed to show his entitlement to a deduction for temporary quarters expenses.

With respect to the remaining amounts claimed on the return as moving expenses, since petitioner claims his move to Hong Kong was in connection with the commencement of self employment, section 217(c)(2)(B) would require that petitioner perform services as a self-employed individual on a full-time basis, in the general location of Hong Kong, for at least 78 weeks of the 24-month period following his arrival there, of which at least 39 weeks must occur during the first 12 months.  Although petitioner was present in Hong Kong for a sufficient period to meet the 78-week requirement, the evidence falls far short of establishing that he was working full time for 39 weeks during the first 12 months.  Petitioner testified that he returned to the United States "sometime" in 1991 for approximately 1 month to purchase a computer system, and that he started his business "shortly" after his return to Hong Kong.  On this evidence, it follows that petitioner necessarily failed the 39-week test if his return to the United States was much later than late February 1991.  In any event, the evidence presented by petitioner, either at trial or in the opportunities presented to him post-trial, fails to demonstrate that he met the requirements of section 217. Accordingly, petitioner is not entitled to any deduction for moving expenses because of both a failure to substantiate actual

expenditures and a failure to demonstrate that he met the requirements of section 217.[11]

Real Estate Taxes

Petitioner claimed real estate taxes of $1,130 on Schedule A of his 1990 return, which respondent disallowed for failure to substantiate. Section 164(a)(1) allows a deduction for State and local real property taxes paid or accrued within the taxable year. Petitioner has failed to produce any evidence to show that he paid the real property taxes claimed on his return. In fact, petitioner indicated in his testimony that he was uncertain whether, and to what extent, he or his ex-wife paid the 1990 real estate taxes. We conclude that petitioner has failed to substantiate the payment of real estate taxes in 1990 and is therefore not entitled to any deduction for them.

Mortgage Interest

Petitioner claimed a deduction for mortgage interest on Schedule A of his 1990 return, which respondent challenges on the grounds that petitioner has failed to substantiate the payment of any mortgage interest or to provide sufficient evidence from which a reasonable estimate could be made.

---

[11]With respect to the $500 in expenses claimed with respect to the move from San Francisco to Los Angeles, petitioner has not shown that he commenced new employment in Los Angeles or that such employment continued for the minimum periods required under sec. 217(c)(2).

The amount of mortgage interest claimed by petitioner as a deduction on the return was $5,760.[12]  As substantiation, petitioner offered into evidence, and respondent did not object to, six canceled checks that petitioner testified were written to make payments on his home mortgage to Bank of America.  The checks had only petitioner's name printed on them, were signed by petitioner, and were made payable to the Bank of America.  The six checks bore the following dates and amounts:

| | |
|---|---|
| January 31, 1990 | $1,894.48 |
| April 1, 1990 | 1,894.48 |
| May 2, 1990 | 914.48 |
| June 1, 1990 | 949.48 |
| July 6, 1990 | 1,292.53 |
| August 5, 1990 | 1,128.53 |

Pursuant to a post-trial order to reopen the record, petitioner's Exhibit 9, a document entitled "Annual Statement of Account for 1990" from the Bank of America as lender, was received into evidence.[13]  The statement contains an account number matching the last seven digits of the number handwritten on the top of each check admitted into evidence and lists petitioner and another individual (presumably petitioner's wife) as borrowers.  The statement further indicates it is a

---

[12]Although petitioner's trial memorandum listed the claimed mortgage interest deduction as $3,176, we believe this figure resulted from a clerical error.  Petitioner's 1990 return claimed a deduction for State and local income and real estate taxes of $3,176 and a deduction for mortgage interest of $5,760.  The trial memorandum mistakenly reversed these figures.

[13]See discussion supra p. 7.

"Substitute Form 1098". We accordingly conclude that the document is a Form 1098 covering petitioner's mortgage loan account activity in 1990.

The Form 1098 lists the amount of each monthly mortgage payment paid in 1990 and a breakdown of each payment into principal versus interest. The Form 1098 also shows that no amounts were escrowed for any purpose. The Form 1098 thus provides evidence as to the amount of interest paid each month.

On this record, we are satisfied that petitioner is entitled to a deduction for some mortgage interest. According to petitioner's testimony, he was uncertain regarding the extent to which his wife may have made mortgage payments. He testified that he thought she paid half, but was uncertain on this point. He also testified that he and his wife sometimes split up payment of the mortgage and real estate taxes.[14]

Given that the Form 1098 contains the name of another individual (presumably petitioner's wife), we conclude on this record that petitioner is not entitled to deduct half of the mortgage interest shown on the Form 1098, as he now contends on brief,[15] but instead is entitled to a deduction for mortgage

---

[14]We conclude elsewhere that petitioner is not entitled to any deduction for real estate taxes, due to a lack of substantiation. See supra p. 13.

[15]Petitioner claimed $5,760 in mortgage interest on his 1990 return. See supra note 12. Petitioner then offered six checks
(continued...)

interest in an amount that we can estimate, under the Cohan rule, based upon the six checks drawn on petitioner's own account and the Form 1098 received into evidence.  Based upon the record, we conclude that petitioner has provided adequate proof of mortgage payments for the 6 months covered by the checks.  There is insufficient proof for the remaining months.  Petitioner's checks, when compared to the total monthly payments listed on the Form 1098, indicate that he paid varying portions of the total mortgage payments, ranging from 100 percent to just under 50 percent, as follows:

| Payment Due Date | Total Payment | Payment By Petitioner | Petitioner's Percentage |
|---|---|---|---|
| Feb.1, 1990 | $1,894.48 | $1,894.48 | 100% |
| Apr.1, 1990 | 1,894.48 | 1,894.48 | 100% |
| May 1, 1990 | 1,894.48 | 914.48 | 48.27% |
| June 1, 1990 | 1,894.48 | 949.48 | 50.12% |
| July 1, 1990 | 2,256.53 | 1,292.53 | 57.28% |
| Aug.1, 1990 | 2,256.53 | 1,128.53 | 50.01% |

---

[15](...continued)
into evidence totaling $8,073.98, which he testified represented payments on his mortgage.  Respondent did not object to the admission of the checks into evidence.  Respondent now contends on brief that the amount of mortgage interest at issue is limited to the amount claimed in petitioner's trial memorandum.
    Under Rule 41(b), issues not raised by the pleadings which are nonetheless tried by express or implied consent of the parties shall be treated in all respects as if they had been raised in the pleadings.  The issue as to the amount of the mortgage interest paid by petitioner was raised at trial upon petitioner's offer into evidence of six checks totaling $8,073.98 that petitioner testified were payments for his mortgage.  The admission of such checks into evidence, without limitation or objection by respondent, placed the amount in issue by implied consent, and we treat the higher amount as if raised in the pleadings, pursuant to Rule 41(b).

The Form 1098 also indicates the amount of each monthly payment attributable to interest. Therefore, by multiplying the percentage of each mortgage payment paid by petitioner times the interest component of the payment, one can derive the amount of interest appropriately treated as paid by petitioner, as follows:

| Payment Due Date | Interest Component of Payment | Petitioner's Percentage | Petitioner's Interest Payment |
|---|---|---|---|
| Feb. 1,1990 | $1,719.51 | 100% | $1,719.51 |
| Apr. 1,1990 | 1,717.13 | 100% | 1,717.13 |
| May 1,1990 | 1,715.93 | 48.27% | 828.28 |
| June 1,1990 | 1,714.72 | 50.12% | 859.42 |
| July 1, 1990 | 2,135.29 | 57.28% | 1,223.09 |
| Aug. 1, 1990 | 2,134.26 | 50.01% | 1,067.34 |
| | | | $7,414.77 |

Therefore, using our discretion under the Cohan rule, we find that petitioner made total interest payments of $7,414.77 in 1990. Petitioner is entitled to a deduction in that amount.

Charitable Contributions

The next issue for decision concerns petitioner's claimed deduction for charitable contributions, which respondent disallowed for lack of substantiation. On his return, petitioner claimed a deduction for gifts to charity in the amount of $2,568, of which $2,132 was listed under contributions by cash or check and $436 was listed under contributions by other than cash or check. To substantiate the deduction, petitioner testified that the claimed contributions were donations to "church and Goodwill, stuff like that". When questioned how he arrived at the figure of $2,568, petitioner testified that he based it on amounts

claimed on his Federal income tax returns for prior years. We accordingly disregard the $2,568 figure in deciding the amount of any charitable deduction to which petitioner may be entitled.

Section 170(a)(1) provides that a charitable deduction is allowed "only if verified under regulations prescribed by the Secretary." For contributions by cash or check, the regulations require the taxpayer maintain for each contribution one of the following: (i) a canceled check, (ii) a receipt, letter or other communication from the donee, showing the name of the donee, the date of the contribution and the amount of the contribution, or (iii) other reliable written records showing the name of the donee, the date of the contribution, and the amount of the contribution. Sec. 1.170A-13(a), Income Tax Regs. Petitioner did not produce any evidence, beyond his vague and incomplete testimony, to substantiate the $2,132 for claimed contributions of money. Accordingly, he has failed to substantiate the claimed money contribution and is not entitled to a deduction therefor.

For contributions of property other than money, the regulations require that the taxpayer maintain a receipt from the donee showing the name of the donee, the date and location of the contribution, and a description of the contributed property in sufficient detail based upon the circumstances. Sec. 1.170A-13(b)(1), Income tax Regs. The receipts submitted after trial by petitioner to substantiate the $436 for claimed contributions are

inadmissable hearsay.[16]  Fed. R. Evid. 802.  Therefore, based upon the record, petitioner has failed to substantiate his claimed deduction for contributions of property, and the deduction is accordingly denied.

Schedule C Expenses

Petitioner claimed a deduction totaling $2,618 for expenses listed on Schedule C of his return, in columns[17] denominated "Advertising", "Bad debts * * * ", "Commissions and fees", "Depreciation and section 179 expense deduction * * * ", and "Meals and entertainment".  At trial, petitioner testified that these expenses were "basically * * * all R and D", incurred for "a lot of research" that petitioner undertook in an effort to develop a computer software package.  Petitioner also testified that the Schedule C expenses were incurred in connection with a "market survey" undertaken shortly after his arrival in Hong Kong.

Respondent proposes to disallow any deduction for the Schedule C expenses on the grounds that petitioner has failed either to substantiate that the expenses were paid or incurred or to demonstrate that they were paid or incurred in carrying on a trade or business as required by section 162(a).

_____

[16]See supra note 5.

[17]Certain dollar figures on the Schedule C were typed too far from any column category to permit a determination of the category under which petitioner meant to classify the expense.

Other than the Schedule C, prepared over 4 years after the period in question, petitioner offered no documentary evidence to corroborate his testimony that the claimed expenses were paid. Petitioner offered no testimony that would connect several of the expense categories, such as bad debts, commissions and fees, depreciation and section 179 expense, and meals and entertainment, to the research activities he claimed were being undertaken and which provided the rationale for claiming expense treatment on the Schedule C. On this record, we conclude that petitioner has failed to substantiate that the claimed expenses were paid or incurred.

In addition, petitioner offered no evidence beyond his self-serving testimony that these expenses were paid "in carrying on" a trade or business within the meaning of section 162(a). Petitioner reported no gross receipts on the Schedule C and offered no documentary evidence whatsoever of the conduct of a business. Petitioner testified that he did not have plans to start a specific business when he arrived in Hong Kong, and given that the parties have stipulated that his arrival occurred in November 1990, the available evidence suggests that it was unlikely that petitioner was actually engaged "in carrying on any trade or business" for purposes of section 162(a) within the 1990 taxable year. Cf. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). On this record, we conclude that petitioner has failed

to demonstrate that the claimed Schedule C expenses were paid or incurred "in carrying on any trade or business" within the meaning of section 162(a).

Although neither party argued the point on brief, we believe that petitioner's claim that these expenses were for "research and development" warrants our consideration whether the expenses may be deductible under section 174 as "research and experimental" expenditures.  Expenditures deductible under section 174 need only be paid or incurred "in connection with" the taxpayer's trade or business, whereas expenses deductible under section 162 must be paid or incurred "in carrying on" such trade or business.  The section 174 requirement is less strict. See Snow v. Commissioner, 416 U.S. 500 (1974); Diamond v. Commissioner, 92 T.C. 423, 439 (1989), affd. 930 F.2d 372 (4th Cir. 1991); Green v. Commissioner, 83 T.C. 667, 686-687 (1984). Thus, section 174 might require a lesser showing than section 162 of the trade or business activities actually conducted by petitioner in 1990.  Nonetheless, we conclude that section 174 does not help petitioner because the record in this case does not support the conclusion that the claimed expenses constitute section 174 expenditures.

Research and experimental expenditures generally refer to research and development costs in the experimental or laboratory sense.  Sec. 1.174-2(a)(1), Income Tax Regs.  The term includes

generally all costs associated with the actual development of a new product, but not expenses for "efficiency surveys, management studies, consumer surveys, advertising, or promotions."  Id. Thus, the expenses claimed by petitioner for "advertising" and a "market survey" on their face do not qualify as research and experimental expenditures under section 174.  As to the remaining expenses--for bad debts, commissions and fees, depreciation and section 179 expense, and meals and entertainment--petitioner offered no evidence to show how any of his expenditures of this nature was connected with the research and development of a computer software package.  Accordingly, we conclude on this record that petitioner has failed to show eligibility for a deduction under section 174.

Failure To File

Respondent also determined that petitioner is liable for an addition to tax under section 6651(a)(1) for failure to file his 1990 return by its due date.  The parties have stipulated that the 1990 return was signed by petitioner on April 1, 1995, and stamped as received by respondent on July 8, 1995.  Therefore, petitioner is liable for the addition unless he can show that the failure to timely file was due to reasonable cause, and not to willful neglect, and he bears the burden of proving both.  United States v. Boyle, 469 U.S. 241, 245 (1985).  A showing of reasonable cause requires that the taxpayer demonstrate that he

exercised ordinary business care and prudence, but nevertheless was unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see also United States v. Boyle, supra at 246. Petitioner relies on two arguments to establish reasonable cause.

First, petitioner claims that he based his decision not to file on brochures he acquired before leaving the United States. Petitioner described one of the brochures as covering U.S. citizens living abroad and advising of an exemption from filing for such citizens making less than $70,000 per year. Petitioner has not produced the brochure. We take judicial notice of Internal Revenue Publication 54 entitled "Tax Guide for U.S. Citizens and Resident Aliens Abroad". Publication 54 states clearly that an individual must file a return in order to claim a $70,000 exemption (available under section 911[18]) and also that the exemption applies only to foreign earned income. Without more, we conclude that petitioner's testimony regarding the brochure fails to establish reasonable cause.

Second, petitioner claims that he based his decision not to file on advice he received from the U.S. consulate in Hong Kong that a return was not required if his income was less than

---

[18]Subject to certain limitations and restrictions, sec. 911 allows a citizen or resident of the United States living abroad to exclude from gross income up to $70,000 in foreign earned income. Sec. 911(a)(1), (b)(2)(A).

$70,000. However, petitioner admits that he did not disclose the fact that he had wage income from Varian in 1990, which was earned in the United States. In light of this fact, it would not have been reasonable for petitioner to rely on the advice received at the U.S. consulate. Marprowear Profit-Sharing Trust v. Commissioner, 74 T.C. 1086 (1980), affd. without published opinion 673 F.2d 1300 (3d Cir. 1981).

On this record, we cannot conclude that petitioner, a college-educated individual who had filed returns for the previous 2 years, undertook a reasonable and sufficient inquiry as to his obligation to file in 1990. Given that he earned significant wage income in the United States during 1990, which was subject to withholding, and resided in the United States for over 10 months of that year, we do not believe that petitioner had a reasonable basis for concluding that no income tax return was due. Therefore, because petitioner has failed to establish reasonable cause for his failure to timely file his 1990 return, he is liable for the addition to tax under section 6651(a)(1).

Failure To Pay Estimated Tax

Respondent also determined an addition to tax for failure to pay estimated income tax under section 6654(a). The addition to tax under section 6654(a) is mandatory unless petitioner can show that he comes within one of the exceptions of section 6654(e). Hudson v. Commissioner, 103 T.C. 90, 110 (1994), affd. without

published opinion 71 F.3d 877 (5th Cir. 1995).  Petitioner bears the burden of proof on this issue, <u>Baldwin v. Commissioner</u>, 84 T.C. 859, 871 (1985), and the record contains no evidence to suggest that petitioner falls within one of these exceptions. Therefore, he is liable for an addition to tax under section 6654(a).

To reflect the foregoing and concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.